## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

FRANCIS NELSON,                              Civil No.:  10cv137  JRT/SER

        Plaintiff,

                               **REPLY MEMORANDUM OF**
vs.                                         **LAW IN SUPPORT OF**
                               **DEFENDANT NAVISTAR, INC.'S**
                               **MOTION FOR SUMMARY**
NAVISTAR INTERNATIONAL                       **JUDGMENT**
CORPORATION,

        Defendant.

Navistar, Inc. ("Navistar") respectfully submits this Reply Memorandum of Law in support of its Motion for Summary Judgment.

## <u>INTRODUCTION</u>

To recover on a claim of product liability under Minnesota law, Plaintiff must establish, amongst other things, that the Navistar truck was defective and that the defect existed when it left Navistar. *Am. Fam. Ins. Group v. JVC Ams. Corp.,* No. 00-27, 2001 WL 1618454, *5 (D. Minn. April 30, 2001) (citing *Lee v. Crookston Coca-Cola Bottling Co.,* 188 N.W.2d 426, 432 (Minn. 1971)). Discovery has failed to reveal a specific defect in the Navistar truck or to identify why the driveshaft fell off.

In response to Navistar's summary judgment motion, Plaintiff has made four basic arguments, including:  1)  Plaintiff himself can testify to product defect and causation; 2) evidence that Navistar paid for the warranty repair is

admissible to prove Navistar's liability for a defect; 3) evidence of six other incidents produced by Navistar during discovery is admissible to prove Navistar's liability in the instant case; and 4) at trial, Plaintiff will be entitled to an adverse inference instruction due to Navistar's alleged spoliation of evidence.  For the following reasons, Plaintiff's arguments fail, and Navistar's summary judgment motion should be granted.

## ARGUMENT

### A.   Plaintiff Does Not Have Expert Testimony to Articulate a Theory of Defect or Causation and Plaintiff Cannot Offer Such Testimony

Plaintiff did not disclose, before the December 15, 2010 expert disclosure deadline, any expert who will offer any testimony explaining why the driveshaft apparently fell off the Navistar truck or offer any opinion that the truck was defective by design or manufacture.

Without expert testimony in the instant case, Plaintiff is unable to state a genuine issue of material fact that the truck was defective when it left Navistar's control or that a defect caused it to fall off.  *See* cases cited in original motion, including *Jaurequi v. Carter Mfg., Inc.,* 173 F.3d 1076 (8th Cir. 1999) (concluding that without expert engineering testimony in a product liability case, plaintiff was left with no defense to summary judgment); *Rye v. Matrix Initiatives, Inc.,* No. 06-3288, 2007 WL 2475960, *4 (D. Minn. Aug. 24, 2007) (summary judgment proper where plaintiff did not offer experts or opinions); *Bilotta v. Kelley,* 346 N.W.2d 616, 623 n. 3 (Minn. 1984) (granting summary judgment where plaintiff failed to

prove a defect); *Wagner v. Hesston Corp.,* 450 F.3d 756, 761 (8th Cir. 2006) ("summary judgment was appropriate" in hay baler case where plaintiff's expert's opinions were excluded); *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.,* 394 F.3d 1054, 1060-61 (8th Cir. 2005) (affirming summary judgment to defendant copier manufacturer where plaintiff's experts' opinions were excluded); *Trost v. Trek Bicycle Corp.,* 162 F.3d 1004, 1009 (8th Cir. 1998) (where the only evidence plaintiff offered of product's defective condition under Minnesota law was expert testimony that the district court excluded, summary judgment was appropriate); *Am. Family Ins. Group v. JVC Americans Corp.,* No. 00-27, 2001 WL 1618454, *4-*5 (D. Minn. April 30, 2001) (summary judgment in a product liability action involving a compact disc player was appropriate after the exclusion of plaintiff's expert testimony); *Mozes v. Medtronic, Inc.,* 14 F. Supp. 2d 1124, 1128 (D. Minn. 1998) (expert testimony needed if it would be speculative for the fact finder to decide the issue of negligence without having the benefit of expert testimony on the standard of care); *Peterson v. Crown Zellerbach Corp.,* 209 N.W.2d 922, 924 (Minn. 1973) (reversing plaintiff verdict alleging that defective meat packing paper caused an odor in meat wrapped in that paper where plaintiff offered no expert testimony, finding that neither a defect in the paper nor a causal connection between the paper and the odor could be inferred absent expert testimony).  Without expert opinions of a defect and causation, there is no genuine issue of material fact as to these issues.

Ron Arneson, Navistar's Customer Service Engineer, testified that he

could not reach a conclusion as to the cause of a failure in a particular part, if any, and that the driveshaft could have fallen off because it was struck by road debris:

[page]          46

```
 3  Q.  Mr. Arneson, based on your review of the parts,
 4  were you able to determine why the parts fell off?
 5    A.  No, sir.
 6    Q.  Were you able to reach a conclusion about how
 7  and why the parts received the damage that you saw on
 8  them?
 9    A.  No, sir.
10    Q.  Now, as I understand it, you did not find
11  enough evidence to attribute the cause to certain
12  things; is that right -- strike that, that's a poor
13  question.
14        Did you have enough information to be able to
15  reach a conclusion that the cause was a failure of a
16  particular part?
17    A.  No, sir.
18    Q.  Were you able to reach a conclusion ruling out,
19  for example, a scenario like something hitting the
20  parts, something on the road for example?
21    A.  No, sir, I couldn't eliminate that.
```

Ron Arneson Dep., 46:3-21, dated March 10, 2011, attached to the Affidavit of James H. Song ("Song Aff.") as Exhibit A.

In response, Plaintiff argues that Plaintiff himself can testify that the transfer case exploded.  The first problem with this argument is that Plaintiff did not identify himself as an expert or produce a Rule 26 Report.  Plaintiff cannot now become a testifying expert in response to a summary judgment motion.

Second, Plaintiff is not qualified to offer such testimony.  Plaintiff has a high school degree, but no formal education beyond that.  Francis Nelson Dep.,

48:2-7, dated September 2, 2011, attached to Song Aff. as Exhibit B.  Although Plaintiff believes that the transfer box exploded, he has never seen one explode. Francis Nelson Dep., 81:3-13, Exhibit B.  When pressed for further explanation of how it could have exploded, Plaintiff testified that, "I really don't know how to explain it," but the puff of smoke seemed to come from that general area. Francis Nelson Dep., 81:14-20, Exhibit B.  Plaintiff did not go look at the Navistar (International) truck (or its component parts).  Francis Nelson Dep., 103:17-18, Exhibit B.   In short, Plaintiff is not an expert and has not done an expert investigation of the incident.

Plaintiff suggests that he can offer this testimony as a lay fact witness. Opinions of defect and the cause of the incident are not within the realm of lay witnesses.   Some areas of inquiry are beyond the common experiences and understanding of lay jurors.   *Roettger v. United Hosp. of St. Paul*, 380 N.W.2d 856, 860 (Minn. Ct. App. 1986) (*quoting Butler v. Acme Markets, Inc.,* 445 A.2d 1141, 1147 (N.J. 1982)).

Plaintiff has disclosed no expert to testify about why the driveshaft fell off the Navistar truck or to articulate a defect that caused it.   Plaintiff has not identified a design or a manufacturing defect or identified a specific component alleged to be defective.  Plaintiff has not articulated how the defect (whatever it may be) caused the driveshaft to fall off.  Without such testimony, there is no genuine issue of material fact as to those issues.

Plaintiff cannot prove the Navistar truck was in the same condition it was in

when it left Navistar's control five and a half months earlier.

Ron Arneson does not create a fact issue.  He could not identify a defect or failure mode.  In fact, he could not rule out the possibility that debris on the road from another vehicle may have hit and dislodged the driveshaft.

**B.    Navistar's Payment for Warranty Repair to the Trucks Involved Does Not Create a Genuine Issue of Material Fact**

After the crash, Navistar's customer, Kobrin, submitted a warranty claim for the damage to the Navistar truck.  Kobrin's insurer, FCCI, paid for the damage to Plaintiff's truck and then submitted a claim to Navistar, which Navistar also paid.  Plaintiff argues that Navistar admitted a product defect existed in the truck by paying these claims.

Documentation of Navistar's payment of the warranty claim to Kobrin for repairs to the Kobrin truck are found in the ISIS Warranty Claim Details, Claims 01149606-A and 0114906-B ("warranty forms") (indicating Navistar paid the repair to the driveshaft and for towing expenses), attached to Song Aff. as Exhibit C.  The fact that Navistar paid for the warranty repair does not create a genuine issue of material fact as to a defect or causation.

First, the warranty forms lack foundation.  The warranty claim document is not even a Navistar document.  It is filled out by the repairing dealership, which is an independent authorized dealer, Maudlin.   Ron Arneson Dep., 9:12-10:2, Exhibit A.  Usually, it is filled out specifically by the warranty administrator at the dealer, although Ron Arneson does not even know who filled out this particular

form.  *Id.*; see also Arneson Dep., 17:15-25.  Although there are portions of the form that are provided by Navistar, the "Complaint/Cause/Correction, the vehicle information" are filled out by the independent authorized dealership.  Arneson Dep., 22:22-23:3, Exhibit A.  The only contribution Arneson made to the form was, "Please pay claim."  Arneson Dep., 23:6-14, Exhibit A.  Navistar cannot be imputed with a document it did not create or adopt.

The warranty documents are also hearsay.  Plaintiff has not shown that the warranty documents meet the business records exception to the hearsay exclusionary rule.  Even if the forms themselves are business records, however, the forms contain multiple layers of hearsay, as the substance of the forms was provided by someone within Maudlin.  Each layer of hearsay must meet a hearsay exception.  Fed. R. Evid. 805.  Since Navistar did not provide the information contained in the forms, they are not a party admission of Navistar.

Plaintiff's attempt to use Navistar's discovery responses identifying the meaning of codes used by Maudlin when filling out the form does not avoid the foundation or hearsay problems.  Navistar's interrogatory answers merely identify the meaning of the codes in the ISIS warranty forms.  Since the codes deemed to be applicable where chosen by Maudlin, any interrogatory answer deciphering the form is also hearsay and lack foundation.

Plaintiff attempts to avoid the hearsay and foundational problems by arguing that by paying the warranty claim, Navistar manifested an adoption or belief in its truth.  That is not correct.  As Arneson's testimony revealed, Navistar

did not identify a defect or a part that failed or determine the cause of the parts failure.  In fact, Navistar could not rule out the possibility that road debris caused the failure.  There was insufficient evidence to identify driver error or repairs by Kobrin as a cause of the failure, *see* Plaintiff's Brief, p. 6, and also insufficient evidence on which to identify a particular part as having failed or identify the cause of the failure.  In fact, although the Navistar dealer identified a rear seal as the failed part, there was no rear seal amongst the parts that Arneson inspected. Arneson Dep., 12:4-11, Exhibit A.  Based on the lack of information, Arneson saw no reason to deny the warranty claim.  Arneson Dep., 18:12-17; 23:19-24, Exhibit A.

Navistar's payment of the Kobrin warranty claim does not create a genuine issue of material fact because the standard upon which Navistar evaluated the warranty claim is the exact opposite from Plaintiff's burden of proof in this case. The burden of proof applied by Navistar in evaluating the warranty claim was that, "I would have considered that a warranty failure due to there was nothing to prove it not to be."  Arneson Dep., 19:1-5, Exhibit A.  Arneson's approach was to pay the claim unless there was some reason not to.  In the absence of sufficient information, Navistar presumed that it was warrantable and paid it "as a customer goodwill" gesture.  Arneson Dep., 9:5-11, Exhibit A.

In this product liability lawsuit, however, the burden of proof is the exact opposite – the truck is presumed to have not been defective unless and until Plaintiff proves a specific defect and proves how that defect caused the incident.

There was insufficient evidence to determine why the components fell off the Navistar truck.  When evaluating whether to repair a customer's truck, the lack of information results in paying the warranty claim as "customer goodwill."  In this lawsuit, however, the lack of evidence means that Plaintiff has failed to create a genuine issue of material fact that the incident was caused by a defect.

Navistar also paid the claim of FCCI on behalf of Kobrin, which had paid the property damage to Plaintiff's truck.  Navistar's decision to pay the property damage claim is not a party admission.  The warranty claim was a claim – an attempt by Kobrin to assert what it believed to be a contractual and legal right.  Navistar chose to compromise that claim rather than litigate it.  In so doing, however, Navistar expressly denied liability.  *See* Full and Final Settlement and General Release Agreement, p. 1, dated August 24, 2007 (stating "Releasors acknowledge and understand that liability is denied by [Navistar] . . ."), attached to Song Aff. as Exhibit D.

In settling the warranty claim, Navistar provided "a valuable consideration in compromising or attempting to compromise" the warranty claim and evidence of it is "not admissible to prove liability for" the incident.  Fed. R. Evid. 408.  Of course, the purpose of this rule is to encourage parties to settle claims by protecting parties from arguments by other claimants that paying one claim is an admission of liability for another.

C.    **Plaintiff's Reliance on Six Other Claims Produced in Discovery Does Not Create a Genuine Issue of Material Fact**

Plaintiffs' expert witnesses in product liability cases often rely on evidence of other incidents ("OI") to support an expert opinion of defect in the product.  In this case, Navistar produced evidence of six OIs, which are really five because one incident produced two claims.  Although plaintiffs' experts in product liability cases are sometimes allowed to cite OI evidence in support of their opinions, Plaintiff has no expert in this case to explain the potential relevance of, or lay foundation for, OIs.

The documentation produced by Navistar of these OIs is replete with hearsay because the factual information about what happened in each incident comes from out of the court declarants and Plaintiff offers it to prove the truth of the matters asserted – that these other incidents occurred and in the manner alleged.  The OI evidence is primarily lawsuit complaints, insurance demand letters, police reports, and emails.  For example, the information about the Barry Proctor incident (NAV000782-800) comes from a claim letter from a Sentry Insurance claims representative, a settlement demand letter from plaintiff's lawyer to Navistar, and the Texas Peace Officer's Accident Report.  *See* NAV000782-NAV000800, attached to Song Aff. as Exhibit E.  The documentation of the Lisa Chappell incident consists of a Liberty Mutual demand letter to Navistar, an expert report from Liberty Mutual's investigator, and a police report. See NAV000801-NAV000810, attached to Song Aff. as Exhibit F.  The only

documentation of what allegedly happened in the Therman Davion incident is a lawsuit complaint drafted by plaintiff's counsel.  *See* NAV000733-NAV000749, attached to Song Aff. as Exhibit G.  Similarly, the documentation of what allegedly happened in the Timothy Valadez and Wesley Gissell incidents (same incident) consists of hearsay lawsuit pleadings drafted by plaintiffs' lawyers and a California Highway Patrol Traffic Collision Report.  *See* NAV000719-NAV000726 and NAV000762-NAV000781, attached to Song Aff. as Exhibit H.  Finally, with respect to the California Department of Forestry #3 incident, the only information about the incident is found in two emails from Rick Brown, Senior Equipment Manager and with Davis Mobil Equipment, who has a California government agency email address.  *See* NAV000754-NAV000755, attached to Song Aff. as Exhibit I.

Courts have excluded other incident evidence based on hearsay.  *See Cook v. Navistar Int'l Transp. Corp.*, 940 F.2d 207, 214 (7th Cir. 1991) (excluding, as hearsay, witnesses who would testify that they had heard of other similar accidents involving defendant's trucks); *Soden v. Freightliner Corp.*, 714 F.2d 498, 507 n. 12 (5th Cir. 1983) (referencing the fact that "[other] complaints are unsworn hearsay allegations of persons seeking to recover money damages from the defendant."); *McKinnon v. Skil Corp.*, 638 F.2d 270, 278 (1st Cir. 1981) (holding that "other incident" evidence from Consumer Product Safety Commission reports was properly excluded by the trial judge as untrustworthy hearsay, in part, because "[m]ost of the data contained in the reports is simply a

paraphrasing of versions of the accidents given by the victims themselves who surely cannot be regarded as disinterested observers."); *Wolf v. Procter & Gamble Co.*, 555 F.Supp. 613, 620 (D.N.J. 1982) (stating "neither [the consumer complaints made over the telephone] nor the statements in the letters of complaint are admissible under any of the hearsay rule exceptions.").

The OIs are also inadmissible because Plaintiff cannot lay foundation for them.  Evidence of other incidents is admissible only if Plaintiff, amongst other things, meets the burden of proving that the other incidents involved products, incidents and alleged defects that are substantially similar to the subject incident. *See Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1014-15 (D. Minn. 2003) (court was "unable to determine with reliability, which [other] claims are substantially similar to [the instant claim]").  *See also Drabik v. Stanley-Bostitch, Inc.*, 997 F.2d 496, 508 (8th Cir. 1993) ("For other accident evidence to be admissible, the proponent of the evidence must show that the facts and circumstances of the other incident are substantially similar to the case at bar."); *Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104, 1109 (8th Cir. 1988) (excluding evidence of M600 rifle misfires in M700 rifle misfire case because "the M600 fire control, with component parts of different shape and dimension than those of the M700, cannot be said to be substantially similar to the M700"); *Colby v. Gibbons*, 276 N.W.2d 170, 176 (Minn. 1979) ("[I]t must appear that the circumstances surrounding the other accidents were substantially the same as those involved in the accident in litigation . . . .") (quoting *Haukom v. Chicago Great Western Ry.*, 132 N.W.2d 271, 279 (Minn. 1964)).

Plaintiff cannot lay a foundational showing of substantial similarity without an expert.  In fact, there are important dissimilaries amongst the OIs that render them lacking in probative value.[1]  For example, although Plaintiff alleges here that the transfer case exploded, the truck involved in the Barry Proctor incident was not even equipped with a transfer case.  *See* Affidavit of Roy S. Zeitlow in Support of Navistar, Inc.'s Reply Memorandum of Law in Support of Its Motion for Summary Judgment ("Zeitlow Aff."), ¶ 3, dated June 2, 2011.  Although Plaintiff alleges here that the transfer case fell off, in the Timothy Valadez and Wesley Gissell incident (one incident), photographs reveal that the transfer case is intact.  *See* Zeitlow Aff., ¶ 4.  The Valadez/Gissell and California Department of Forestry #3 incidents involved medium duty 4800 4x4 trucks, whereas this case involves a heavy duty 5600i 6x6 truck.  *See* Zeitlow Aff., ¶ 5.  This dissimilarity is important because the front drive shafts have different componentry between the 4800 4x4 and the subject 5600i 6x6, the transmission is dissimilar (automatic vs. manual) and the 4800 trucks had a smaller transfer case made by a different manufacturer than the transfer case in the subject truck.  *Id.  See also* Robert A.

---

[1] The evidentiary foundation of substantial similarity is "especially important" where other incident evidence is being proffered "to show the existence of a dangerous condition or causation."  *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988).  The rationale for requiring substantial similarity is that "[a]s the circumstances and conditions of the other accidents become less similar to the accident under consideration, the probative force of such evidence decreases.  At the same time, the danger that the evidence will be unfairly prejudicial remains."  *Id.* at 1269.

Sachs, *"'Other Accident' Evidence in Product Liability Actions: Highly Probative or an Accident Waiting to Happen?"* 49 Okla.L.Rev. 257, 262 (1996), stating:

> If different products, or even different models of the same product, are involved in other accidents, those other accidents may have little or no relevance to the claim in issue, even if the other models are produced by the same manufacturer. Different models frequently have different characteristics and these differences may affect the occurrence or causation of an accident.

Sachs, 49 Okla. Rev. at 262.

### D.   Plaintiff is Not Entitled to a Spoliation Adverse Inference Instruction

Plaintiff argues that he is not able to have an expert inspect the parts because the parts are no longer available and that Navistar is to blame.  An adverse inference instruction is only appropriate, however, where there is a finding of "intentional destruction of evidence indicating a desire to suppress the truth, not the prospect of litigation."  *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (citing *Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004)).   The second requirement is that there must be a finding of prejudice to the opposing party before an adverse inference instruction will be given.  *See Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 267 (8th Cir. 1993).

In the present case there is no evidence that Navistar intentionally destroyed any evidence.   As Plaintiff acknowledges, Navistar did not have custody of the parts.  Plaintiff Opposition Brief, p. 16.  Rather, the parts were in the custody of Maudlin International, an independent (separate entity) authorized

dealer for Navistar.  Arneson never had possession of the parts.  Arneson Dep., 39:16-19, Exhibit A.

Although Plaintiff argues that Navistar should have foreseen litigation, there is no evidence that Navistar had notice of a potential personal injury claim while the parts were in the possession of Maudlin International.  Arneson inspected them "within a short time period" after the incident.  Arneson dep., 28:4-8, Exhibit A.  "It's the repairing dealership's [Maudlin] responsibility to hold on to the parts for a limited amount of time to ensure payment for their warranty claim on the repair."  *Id.* at 39:3-15, Exhibit A.  The Arneson testimony cited by Plaintiff does not convey how, why, or when the parts were disposed of.  It only shows that Navistar did the analysis it needed to do to evaluate the warranty claim and Maudlin did not keep the parts.

Since the parts were in the possession of Maudlin, Plaintiff had equal access to the parts.  There is no evidence, however, that Plaintiff took any steps to attempt to gain access to or custody of any of the parts.  *See, e.g., Kmetz v. Johnson*, 113 N.W.2d 96, 101 (Minn. 1962) (If the evidence is equally available to either party, no adverse inference may be drawn against either party for failing to produce the evidence).  Plaintiff knew of his personal injury claim before Navistar did.  Plaintiff had equal opportunity to gain access to the parts and had more knowledge as to the advisability of doing so.

In sum, the evidence does not support a finding that Navistar destroyed any evidence with the intent to suppress the truth, or that, if there was any purposeful destruction of evidence, Plaintiff has been severely prejudiced.

## CONCLUSION

There is no genuine issue of material fact as to what part on the Navistar truck failed or why.   There is no genuine issue of material fact that any component of the truck was defective.   Therefore, summary judgment should be granted.

BOWMAN AND BROOKE LLP

Date:  June 3, 2011

By: s/ James H. Song
David N. Lutz (#203191)
James H. Song (#0348636)
150 South Fifth Street, Suite 3000
Minneapolis, MN  55402
Telephone:  (612) 339-8682
Fax:  (612) 672-3200

**ATTORNEYS FOR DEFENDANT
NAVISTAR, INC.**