# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| FRANCIS NELSON, | Civil No. 10-137 (JRT/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| NAVISTAR INTERNATIONAL CORP., | |
| Defendant. | |

Randall G. Knutson and Daniel J. Bellig, **FARRISH JOHNSON LAW OFFICE**, 1907 Excel Drive, Mankato, MN 56001, for plaintiff.

James H. Song and David N. Lutz, **BOWMAN & BROOKE LLP**, 150 South Fifth Street, Suite 3000, Minneapolis, MN 55402, for defendant.

Plaintiff Francis Nelson brought this action against Navistar International Corp. ("Navistar")[1] alleging negligent manufacture and installation of the driveshaft of a truck that Navistar manufactured. Nelson was operating a truck immediately behind the Navistar truck when the driveshaft and other debris fell out of the Navistar truck and into Nelson's lane of traffic. Nelson's truck ran over some of the debris, causing damage to the truck. While Nelson was inspecting the damage to his truck, a tire exploded, damaging Nelson's ear. Nelson is seeking damages for the injuries he suffered, including loss of hearing. Navistar has filed a motion for summary judgment.

---

[1] The correct name of the defendant is Navistar, Inc., but it is incorrectly named as Navistar International Corporation in the Complaint. (Def.'s Mem Supp. Summ. J. at 1, Docket No. 42.) The Court will refer to the defendant as Navistar.

The Court will grant summary judgment to Navistar because no reasonable fact finder could conclude it was more likely than not that a defective condition rendered the Navistar truck unreasonably dangerous or that a defect in the Navistar truck caused Nelson's injury**.**

## BACKGROUND

Francis Nelson is a semi-truck driver who lives in Hector, Minnesota.  (Compl., ¶¶ 1, 4, Docket No. 1.)   He is fifty-six years old and has been an over-the-road truck driver for thirty-seven years.  (Aff. of Daniel J. Bellig, May 20, 2011, Ex. D, Nelson Dep. at 45, 48, Docket No. 50.)  On April 10, 2007, at approximately 12:15 p.m., Nelson was driving south in a Kenworth semi-truck on I-95 (State Road 9) in Florida.  Nelson was following a 2007 Navistar-built International 5600i 6x6 straight truck ("Navistar truck"). (Aff. of Roy S. Zeitlow, Apr. 28, 2011, ¶ 4, Docket No. 44; Bellig Aff., Ex. E, Arneson Dep. at 7, Docket No. 48.)  The drive shaft and other debris fell from the Navistar truck and landed in Nelson's lane of traffic.  (Nelson Dep. at 84.)  Because of other traffic on the road, Nelson could not swerve and was forced to hit the metal debris.  (*Id.* at 84-85.) Nelson then pulled off the road and exited his truck.  (Compl. ¶ 4; Nelson Dep. at 89.) He first spoke to the driver of the car behind him, Sandra Taylor, whose car had also been hit by debris.  (Nelson Dep. at 85-86.)  After speaking to Taylor, Nelson inspected his vehicle for damage.  (*Id.* at 88.)  During the inspection, one of his truck's tires exploded, and as a result of the explosion, Nelson suffered hearing loss in his left ear.  (Compl. ¶ 4; Nelson Dep. at 7, 86, 88.)

Nelson asserts, based on his observations of the incident and thirty-five years of experience being around trucking equipment, that the Navistar truck's transfer box exploded. (Nelson Dep. at 80-81.) Nelson testified, "I saw a great big puff of smoke and stuff fly off this truck, this International truck." (*Id.* at 79.) He also stated "I—what I think happened is the transfer box exploded." (*Id.* at 81.) Navistar asserts that Nelson is not qualified to offer this testimony because he is not an expert. In addition, Nelson had never before seen a transfer box explode, and did not know what would cause one to do so. (*Id.*) The explanation Nelson gave for his conclusion that the transfer box exploded was, "I really don't know how to explain it, but it's that that's what it seemed like to me because a truck of that type, they have them on there and it came from the general area where they are." (*Id.*)

**<u>Navistar Truck</u>**

The Navistar truck had 8,159 miles on it at the time of the accident and had left Navistar's control five months prior to the accident. (Zeitlow Aff. ¶¶ 3-4.) Kobrin Builders Supply of Orlando, Florida owned the Navistar truck. (Pl.'s Mem. Opposing Def.'s Mot. to Change Venue, at 4, Docket No. 24.) Nothing in the record indicates that any modifications had been made to the truck by Kobrin Builders Supply. (*See* Pl.'s Mem. Opposing Summ. J. at 6, Docket No. 48.)

Following the accident, the Navistar truck was towed to the Maudlin International dealership for assessment and repairs. (*See* Def.'s Reply Mem. Supp. Summ. J. at 14, Docket No. 51.) Someone at the dealership filled out a warranty claim form and submitted it to Navistar. (Arneson Dep. at 9.) The warranty claim form contains codes

describing the basis for the claim.  (*Id.* at 9-10, Ex. 4.)  The codes indicated a "production part," the "real seal," was "inoperative."  (Bellig Aff., Ex. A. at 3-4.)

Ronald Arneson, a Customer Service Engineer for Navistar, performed a "failed parts inspection" of the Navistar truck for Navistar.  (Arneson Dep. at 4, 11.)  Following this inspection, Arneson directed Navistar to pay the warranty claim submitted by the dealership.  (*Id.* at 23.)  Describing the process, Arneson stated, "I would have gone to the dealership, I would have viewed the available parts at that time and did not see a reason why we would deny the dealer's claim as a warranty repair."  (*Id.* at 23.)

Following an inspection, it is normal practice for the dealership to retain the failed parts for a limited amount of time.  (*Id.* at 38.)  By the time he was deposed (in March 2011, nearly three years after the accident), Arneson believed the parts he inspected had already been disposed of.  (*Id.* at 38.)

**<u>Nelson's truck</u>**

Nelson's Kenworth semi-truck also suffered extensive damage and was towed to a Kenworth dealership.  (Nelson Dep. at 100 & Ex. 7.)  Over $7,000 of repairs were performed on Nelson's truck by the dealership.  (*Id.*)

On August 24, 2007, FCCI Insurance Group, as "subrogee of Francis Nelson" in consideration of $3,916.98 "paid by and on behalf of International Truck and Engine Corporation" entered a Full and Final Settlement and General Release Agreement.  (Aff. of James H. Song, Apr. 29, 2011, Ex. F. at 1, Docket No. 43.)  The agreement states:

> [FCCI Insurance Group] intend to and hereby release and forever discharge
> International Truck and Engine Corporation . . . from any and all property

claims, causes of action and demands regarding property damage of every kind or nature, known or unknown, anticipated or unanticipated, suspected or unsuspected, including any claim for increased damaged for changed conditions and consequences flowing therefrom . . . arising out of or in any way pertaining to any and all losses, costs, damages or expenses, whatsoever, resulting from or in any way growing out of the accident that occurred on April 10, 2007.

(*Id.*) International Truck and Engine Corporation sent two checks made payable to FCCI on August 24. (Arneson Dep., Ex. 6.) The letter accompanying the checks states that "$3,916.98 . . . is for reimbursement of payments made by FCCI to Francis Nelson for property damage" and "$4,161.04 . . . is for reimbursement of payments made to Sandra Taylor[2] for property damage." (*Id.*)

On December 17, 2009, Nelson commenced this action against Navistar in Minnesota State Court seeking damages for losses associated with the injury to his ear. On January 15, 2010, Navistar removed this action to federal court. On August 4, 2010, this Court denied Navistar's motion to transfer venue to Florida.

## ANALYSIS

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A court considering a motion for summary judgment must view the facts in the

---

[2] Sandra Taylor was the driver of the car behind Nelson. (Nelson Dep. at 85-86.)

light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   NAVISTAR'S SUMMARY JUDGMENT MOTION

"Minnesota merges negligence and strict liability claims into a single products liability theory, which employs a reasonable-care balancing test to determine whether a product is defective." *Thompson v. Hirano Tecseed Co., Ltd.*, 456 F.3d 805, 809 (8th Cir. 2006).[3]   To recover under a defect-design theory in Minnesota, an injured party must establish the following:

    (1)    that the product was in a defective condition unreasonably dangerous for its intended use;

    (2)    that the defect existed when the product left the defendant's control; and

    (3)    that the defect was the proximate cause of the injury sustained.

*Patton v. Newmar Corp.*, 538 N.W.2d 116, 119 (Minn. 1995).

The Court will grant Navistar's motion for summary judgment because Nelson has failed to provide enough evidence to demonstrate (1) that a defect rendered the product unreasonably dangerous for its intended use, (2) that the defect was the likely cause of the accident, or (3) that a defect was a proximate cause of the injury sustained.

---

[3] "Federal courts sitting in diversity apply the choice-of-law rules of the forum state." *Cicle v. Chase Bank USA,* 583 F.3d 549, 553 (8th Cir. 2009). Applying Minnesota's choice-of-law rules, the first inquiry is "whether the choice of one state's law over another's creates an actual conflict." *Jepson v. Gen. Cas. Co. of Wis.,* 513 N.W.2d 467, 469 (Minn. 1994). The parties agree that there is no conflict of law between Minnesota and Florida product liability law and that Minnesota law applies.

### A.   Evidence that a Defect Rendered the Product Dangerous for its Intended Use

Nelson has not produced enough evidence to demonstrate that Navistar's product was defective, rendering it dangerous for its intended use.   Nelson has the burden of introducing sufficient evidence that would permit a jury to find it more likely than not that the Navistar truck was defective.   *See Peterson v. Crown Zellerbach Corp.*, 209 N.W.2d 922, 923 (Minn. 1973) (noting that the burden of proof is on the plaintiff).   "It is never enough . . . [to] suggest[] a possibility.   The evidence in proof must justify sound and honest inferences."   *Id.* at 923-24 (quoting *LaFavor v. Am. Nat'l Ins. Co.*, 155 N.W.2d 286, 291 (Minn. 1967)).

Nelson need not necessarily rely on expert testimony to demonstrate that the product is defective.   "Expert testimony is not necessary to establish a standard of care 'where the acts or omissions complained of are within the general knowledge and experience of laypersons.'"   *Burris v. Versa Prods., Inc.*, 2009 WL 3164783, at *3 (D. Minn. Sept. 29, 2009) (quoting *Mozes v. Medtronic, Inc.*, 14 F. Supp. 2d 1124, 1128 (D. Minn. 1998)); *see also Peterson*, 209 N.W.2d at 924 ("[T]here is no hard-and-fast rule requiring plaintiff to introduce expert testimony in product liability cases . . . .").   "If, however, it would be speculative for the fact finder to decide the issue of negligence without having the benefit of expert testimony on the standard of care, the expert testimony is necessary."   *Mozes*, 14 F. Supp. 2d at 1129 (internal quotation marks and citation omitted).

Nelson provides no expert testimony, but he asserts that Navistar's payment of the warranty claim evidences a product defect, establishing that "a failed rear seal" which is "a 'production part,' was inoperative and the cause of the parts failure." (Pl.'s Memo. Opposing Summ. J. at 9.) Navistar asserts that the warranty forms are inadmissible. Even assuming that the warranty repair forms are admissible, Nelson nevertheless fails to provide any evidence that the defect created a condition "unreasonably dangerous for its intended use." *Patton*, 538 N.W.2d at 119. Assuming that the evidence proves the ring seal was defective, there is no evidence that would allow a jury to determine that this defect created an unreasonably dangerous condition. No evidence connects the defective ring seal to the explosion observed by Nelson or to the disconnection of the drive shaft. Therefore, "it would be speculative for the fact finder to decide the issue of negligence" on the presented evidence. *Mozes*, 14 F. Supp. 2d at 1128 (internal quotation marks and citation omitted). Any connection is just a "possibility" – insufficient to "justify sound and honest inferences." *See Peterson*, 209 N.W.2d at 923-24.

Nelson also states that the lack of evidence demonstrating a defect could be overcome by an adverse inference instruction for spoliation of the Navistar parts. An adverse inference instruction is inappropriate here. Such an instruction for the pre-litigation destruction of evidence requires a showing of "intentional destruction indicating a desire to suppress the truth." *Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004) ((quotation marks and citation omitted). There is no evidence indicating that either Navistar or the dealership intentionally destroyed evidence to suppress the truth. Neither Navistar nor Arneson, its Customer Service Engineer, ever had custody of the parts.

(Arneson Dep. at 39.)  Moreover, nothing in the record suggests that Navistar instructed the dealership to destroy the parts for any reason, much less in order to suppress evidence.  Therefore, an adverse inference instruction would be inappropriate.

In conclusion, the Court finds Nelson has not produced expert testimony or any other evidence that would allow a reasonable fact finder to conclude that a defect existed, rendering the Navistar truck dangerous for its intended use.

**B.      Evidence that a Defect Existed When the Truck left Navistar's Control**

Even if the Court had found a defect existed in the Navistar truck rendering it dangerous for its intended use, no record evidence suggests that the defect existed when the truck left Navistar's control.  Nelson argues that payment of the warranty claim for the Navistar truck is an "admission of liability" – including the fact that the defect existed when it left Navistar's control.  (Pl.'s Mem. Opposing Summ. J. at 14.)  However, Nelson provided no evidence that the accident is necessarily attributable to a manufacturing defect and not "to one or more causes for which defendant is not responsible," such as debris on the road.  *Bossons v. Hertz Corp.,* 176 N.W.2d 882, 885 (Minn. 1970).  The Court concludes there is no evidence that would allow a reasonable fact finder to determine that a defect that caused the accident existed when the Navistar truck left Navistar's control.

**1.      The Doctrine of Res Ipsa Loquitur Does Not Rescue Nelson's Claim**

Nelson argues that sufficient circumstantial evidence exists to establish that the Navistar truck was defective and that the defect existed when the truck left Navistar's

control.   The doctrine of res ipsa loquitur "is merely another way of characterizing the minimal kind of circumstantial evidence which is legally sufficient to warrant an inference of negligence."   *Olson v. St. Joseph's Hosp.*, 281 N.W.2d 704, 708 (Minn. 1979).   To submit his claim to the jury on the theory of res ipsa loquitur, Nelson must establish sufficient evidence of three elements:

> (1)   The event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
>
> (2)   it must be caused by an agency or instrumentality within the exclusive control of the defendant; and
>
> (3)   it must not have been due to any voluntary action or contribution on the part of the plaintiff.

*Stelter v. Chiquita Processed Foods, LLC*, 658 N.W.2d 242, 247 (Minn. Ct. App. 2003) (quoting *Warrick v. Giron*, 290 N.W.2d 166, 169 (Minn. 1980)).   However, "the doctrine is inapplicable if the accident may reasonably be attributable to one or more causes for which defendant is not responsible."   *Bossons*, 176 N.W.2d at 885.   The Court finds the doctrine of res ipsa loquitur inapplicable because Nelson has failed to demonstrate (1) that the events would not normally occur in the absence of negligence or (2) that Navistar had exclusive control of the Navistar truck.[4]

Nelson contends that his testimony, Arneson's testimony, and other record evidence of similar malfunctions demonstrate that the accident would not have occurred in the absence of negligence.   However, neither Nelson nor Arneson provided testimony establishing that only negligence would cause parts to fall off the truck.   Although Nelson

---

[4] Neither party presented any evidence that Nelson contributed in any way to the accident.

asserts that other Navistar trucks in the same series have had chronic problems with drive shafts,  he does not explain the relevance of or to lay foundation for these other instances, and the probative value of this evidence is unclear because of dissimilarities between this accident and the other instances.  In sum, Nelson failed to present evidence that the **only** reason the drive shaft would have fallen out was someone's negligence.

At the time of the accident, Navistar no longer retained exclusive control over the Navistar truck.  However, exclusivity for the purposes of res ipsa loquitor "is sufficiently shown if the defendant had control of the instrumentality at the time of the negligent act, even if control might have not been exclusive when the injury occurred."  *Stelter*, 658 N.W.2d. at 248.  Because Nelson has not identified the negligent act, the Court finds that Nelson has not presented sufficient evidence that Navistar had control of the truck at the time of the negligent act.

The Court concludes Nelson has failed to demonstrate that the accident would not normally occur in the absence of negligence and that Navistar had exclusive control of the Navistar truck.  Therefore, the doctrine of res ipsa loquitur does not rescue Nelson's claims that the Navistar truck was defective and that the defect existed when the truck left Navistar's control.

### C.    Evidence that the Defect Was the Proximate Cause of Nelson's injuries

Even if the Court found that the Navistar truck was defective and the defect existed at the time the truck left Navistar's control, there is insufficient evidence for a reasonable fact finder to determine that the defect was the cause of Nelson's injuries.  A defect was the cause of Nelson's injuries only if the defect caused the drive shaft to fall

from the Navistar truck, the drive shaft caused the damage to Nelson's truck, the damage to Nelson's truck caused his tire to explode – after some delay – and the explosion from his tire caused Nelson's hearing loss.  There is no evidence for this causal connection other than the temporal proximity of the falling debris and Nelson's injury.  The Court concludes that this connection is too attenuated to support a finding that the defect was the proximate cause of Nelson's injuries.

The Court concludes that Nelson has not demonstrated sufficient evidence (1) that the Navistar truck was in a defective condition unreasonably dangerous for intended use, (2) that the defect existed when the truck left Navistar's control, or (3) that the defect was the proximate cause of Nelson's injuries.  For these reasons, the Court grants Navistar's motion for summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Navistar International Corporation's Motion for Summary Judgment [Docket No. 40] is **GRANTED**.

### LET JUDGEMENT BE ENTERED ACCORDINGLY.

DATED:  November 7, 2011
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge